# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT F. CULLEN, III<br>    Plaintiff<br><br>v.<br><br>EDUCATIONAL CREDIT MANAGEMENT<br>CORPORATION<br><br>    Defendant | Civ. No: 07- |

## COMPLAINT

### PARTIES

1. The Plaintiff, Albert F. Cullen, III (hereinafter "Cullen"), resides at 25 Cranberry Way, Marion, Massachusetts 02738

2. The Defendant, Educational Credit Management Corporation (hereinafter "ECMC") is a corporation with a principal place of business at 101 E. 5th Street, Suite 200, St. Paul, Minnesota, 55101.

### JURISDICTION

3. The Plaintiff brings this action pursuant to Section 1962k(d) of the Fair Debt Collection Practices Act (the FDCPA"), (15 U.S.C. 1962k(d)) which states, "An action to enforce any liability created by this title may be brought in any appropriate United States District Court without regard to the amount in controversy . . . ." The Plaintiff brings related state claims pursuant to M.G.L. c. 93A under pendant jurisdiction.

### ALLEGATIONS

4. While attending Suffolk University Law School in the years 1998 through 2002, Cullen applied for and received so called, "student loans" which were guaranteed by the Department of Education. Cullen had no other student loans.

5. After 1992 Cullen made sporadic payments on the student loans and at some point he defaulted on the student loans.

6. After Cullen's default the Department of Education as the student loan notes' guarantor assumed the debt and collection obligation.

7. On or about November 30, 2004, Cullen filed a Voluntary Chapter 7 Bankruptcy Petition (Case No. 04-19656) (the "Bankruptcy") in the United States Bankruptcy Court District of Massachusetts.

8. On or about February 14, 2005, Cullen as part of the aforementioned bankruptcy proceeding filed an Adversary Proceeding (No. 05-01072) (the "Adversary Proceeding") naming the United States Department of Education as the sole Defendant. Said Adversary Proceeding was electronically docketed on the Bankruptcy Court's web site (see Docket attached hereto as Exhibit 1).

9. All of Cullen's outstanding student loans to the Department of Education were the sole subject matter of the Adversary Proceeding.

10. Cullen was seeking through the Adversary Proceeding to terminate all of his financial obligations to the Department of Education as a result of the defaulted student loans.

11. On or about June 12, 2006, Cullen and the Department of Education settled the Adversary Proceeding by entering into an Agreement For Judgment for all outstanding student loans (see "Agreement For Judgment" attached hereto as Exhibit 2).

12. The Department of Education produced discovery as part of the Adversary Proceeding. The discovery included but was not limited to all of the promissory notes Cullen had executed in connection with his student loans.

13. On June 12, 2006, the Agreement for Judgment was electronically documented on the Bankruptcy Court's website (see Document 30, Exhibit 2).

14. On December 15, 2006, ECMC sent a "demand" letter seeking $19,205.69 in "defaulted" student loans. The letter threatened, amongst other actions, of notifying Cullen's employer and seizing a portion of his paycheck, seizing any state and federal income tax refunds due Cullen and the *filing of a civil suit* to compel repayment of the debt (see "December 15, 2006 letter attached hereto as Exhibit 3).

15. In early January 2007 Cullen called ECMC at 800-780-7997, regarding the December 15, 2006 letter. Cullen was instructed to speak with Greg (Last Name Unknown) ("Greg LNU") at ext. 5603. Cullen left a message for Greg LNU advising him that the loans on which ECMC was seeking to collect had been settled as part of the adversary proceeding. During January 2007, Cullen left several messages with Greg LNU. Every message advised Greg that the obligation ECMC was seeking to collect was

previously satisfied as a result of the adversary proceeding and the obligation was no longer outstanding.

16. Greg LNU left several return messages for Cullen instructing Cullen to contact Greg LNU regarding his outstanding student loans.

17. On February 2, 2007, having been unable to speak with Greg LNU directly regarding this matter Cullen sent a letter advising ECMC that the loans had been settled as part of the adversary proceeding (see February 2, 2007 letter attached hereto as Exhibit 4).

18. On February 6, 2007, Greg LNU called Cullen at his place of employment regarding the outstanding student loans. Cullen spoke with Greg LNU and explained that the loans in question had been settled as part of the adversary proceeding. At this point Greg LNU unknown became hostile stating, "I don't care about that [meaning the adversary proceeding] I'm going to call you every day until you pay." Cullen requested Greg LNU provide his last name, his supervisor's name, and any proof the obligation was outstanding. Greg LNU adamantly refused.

19. At 4:07 PM EST after speaking with Greg, Cullen faxed Greg LNU a fax cover sheet along with a copy of the Agreement for Judgment (see fax cover and confirmation attached hereto as Exhibit 5).

20. Shortly after sending the Agreement for Judgment to Greg LNU, Cullen received a message from Greg LNU stating he was again calling to "discuss payment of my student loans to ECMC (see February 7, 2006 (sic) letter confirming events of February 6, attached hereto as Exhibit 6).

21. On February 7, 2007, Cullen through his own investigation was able to determine that Greg LNU's supervisor was Deborah McMahon. Cullen had a conversation with McMahon via telephone. McMahon advised Cullen that she had received a copy of the Agreement for Judgment and stated that the Agreement "did not cover" the loans being collected by ECMC. Further ECMC would continue to report these loans in default and continue to contact Cullen in an attempt to collect these loans "as required by Federal Law" (see Letter of February 7, 2007 attached hereto as Exhibit 7 and fax confirmation Letter of February 8, 2007 attached hereto as Exhibit 8).

22. Cullen advised McMahon that both her and Greg LNU's actions were in violation of state and Federal Law, specifically the Fair Debt Collection Practices Act (the "FDCPA"). McMahon stated neither Massachusetts law or the FDCPA applied to ECMC since ECMC was not a "debt collector".

23. In furtherance of McMahon's position on February 7, 2007, after receiving the Agreement for Judgment on February 6, 2007, ECMC sent a "Final Demand Notice" again threatening various actions (see February 7, 2007, Final Notice attached hereto as Exhibit 9).

3

24. At approximately 3:00 PM on February 8, 2007, McMahon phoned Cullen and admitted that the loans ECMC had been trying to collect had in fact been settled as part of the adversary proceeding (see fax confirmation and letter of February 8, 2006 (sic) attached hereto as Exhibit 10).

25. On February 8, 2007 McMahon promised Cullen that he would receive a letter confirming and apologizing for ECMC's error. In addition ECMC would take the necessary action and provide proof of same to correct any errors on Cullen's credit report. McMahon asserted that ECMC was not liable under the FDCPA since it was "not a debt collector" and "affiliated with the Department of Education".

26. On February 14, 2007, ECMC sent a letter informing Cullen for the first time that the Treasury Department had been notified to withhold any federal tax refunds as a result of this matter. Cullen was asked to wait at least four weeks before filing his return, (see Letter of February 14, 2007 attached hereto as Exhibit 11).

27. The February 14, 2007 letter contained no indication when ECMC initially notified the Treasury Department.

28. Cullen received no further communication from ECMC regarding this matter until Cullen sent a formal demand letter.

29. On February 20, 2007 Cullen sent a formal demand letter pursuant to the Fair Debt Collection Practices Act and Massachusetts General Law 93A (see letter of February 20, 2007 attached hereto as Exhibit 12).

30. On February 23, 2007, Cullen received a fax from ECMC in response to his February 23, 2007 demand letter. ECMC stated the attempted collection was the result of the Department of Education's "error". "You were advised by Deborah, American Student Assistance (ASA) transferred your loan to ECMC in error. The fax also stated further ramifications may result for which ECMC took no responsibility. The fax incorrectly summarized the events as accurately set forth above.

31. The collecting or attempting to collect a debt that is not past due is not in the performance of the official duties of the Department of Education.

## COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (15 U.S.C.S Sec. 1692 et seq.)

32. Paragraphs 1-32 are reasserted and incorporated by reference herein.

33. ECMC, Greg LNU, McMahon and the Department of Education (the "Defendants") violated 15 U.S.C. 1692d by engaging in conduct that harassed, oppressed, and abused Cullen.

34. The Defendants violated 15 U.S.C. 1962e by using false, deceptive, misleading representations and means in attempting to collect a debt which the Defendants knew or should have known was previously satisfied.

35. The Defendants violated 15 U.S.C. 1962f by using unfair or unconscionable means to collect or attempting to collect a debt.

36. The Defendants violated 15 U.S.C. 1962g by failing to properly validate the debt as prescribed in the statute.

37. The Defendants violated 15 U.S.C. 1962j by designing compiling and furnishing a form knowing that form would be used to create the false belief in a consumer that a person other then the creditor of such consumer is participating in the collection of or in the attempt to collect the debt such consumer allegedly owes such creditor.

## DAMAGES FOR VIOLATION OF THE FDCPA

38. Paragraphs 1-38 are reasserted and incorporated herein by reference.

39. Cullen is seeking actual damages under 15 U.S.C. 1692k(a)(1) in an amount to be proven at trial.

40. Cullen is seeking statutory damages in the amount of $1,000 under 15 U.S.C. 1692k(a)(2).

41. Cullen is seeking costs of this action and reasonable attorneys fees under 15 U.S.C. 1692k(a)(3).

## COUNT II

## VIOLATIONS OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A

42. Paragraphs 1-42 are reasserted and incorporated herein by reference.

43. The Defendants violated Cullen's rights as a consumer by engaging in unfair and deceptive practices in violation of M.G.L. c. 93A

## DAMAGES FOR VIOLATION OF M.G.L. c. 93A

44. Paragraphs 1-44 are reasserted and incorporated herein by reference.

45. Cullen is seeking actual damages for emotional distress under M.G.L. c 93A in an amount to be proven at trial.

46. Cullen is seeking to have the damages trebled pursuant to M.G.L. c. 93A.

47. Cullen is seeking the costs of this action and reasonable attorneys fees under M.G.L. c. 93A.

## REQUEST FOR JURY TRIAL

48. Paragraphs 1-48 are reasserted and incorporated herein by reference.

49. Cullen hereby requests a trial by jury in this matter.

Respectfully Submitted
Albert F. Cullen, III
By His Attorney

Albert F. Cullen, Jr.
BBO#107900
60 K Street
Boston, MA 02127
(617) 268-2240

April 10, 2007